## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

IN RE:                              )        No.    14-50434

Michael Siek                       )        Chapter 11

    Debtor                        )        September 18, 2015

## CHAPTER 11 PLAN OF REORGANIZATION

Michael Siek (the "Debtor") proposes the following Chapter 11 Plan of Reorganization (the "Plan") to his creditors pursuant to §1121(a) of Chapter 11 of the Bankruptcy Code (11 U.S.C. §101 et. seq.) (the "Bankruptcy Code").

## ARTICLE ONE

## DEFINITIONS

1.    **Administrative Expense** means any right to payment constituting a cost or expense of administration of the Reorganization Cases that is Allowed under §§503(b), 507(a)(1), and 507(b) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Debtors' Estates, (b) any actual and necessary costs and expenses of operating the Debtors' business, (c) any indebtedness or obligations incurred or assumed by the Debtors in Possession during the Reorganization Cases, and (d) any compensation for professional services rendered and reimbursement of expenses incurred, to the extent Allowed by Final Order under §§330 or 503 of the Bankruptcy Code.

2.    **Affiliate** includes (i) with respect to the Debtor, all persons within the meaning set forth in §101(2) of the Bankruptcy Code, (ii) any Person in which the Debtor holds an ownership interest or serves as an officer, director, manager, or in any other supervisory capacity, and (iii) with respect to any Person (including, without limitation, a Debtor) another Person who controls, is controlled by, or is under common control with, such Person.

3.    **Allowed** means (i) with reference to any Claim, (a) any Claim against any Debtor, which has been listed by such Debtor in his/hers/theirs Schedules (as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1007) as liquidated in amount and not disputed or contingent and for which no proof of Claim has been filed, (b) any Claim as to which the liability of a Debtor and the amount thereof are determined

1

by a Final Order, or (c) any Claim against any Debtor allowed pursuant to this Plan, and (ii) with reference to any Claim or Administrative Expense, (a) any Claim or Administrative Expense that is the subject of a timely filed proof of Claim or request for an Administrative Expense as to which no objection to allowance or request for estimation has been interposed on or before the applicable period of limitation fixed by this Plan or otherwise ordered by the Bankruptcy Court, or as to which any objection or request for estimation has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, (b) any Claim or Administrative Expense expressly allowed under this Plan, or (c) any Claim or Administrative Expense allowed under §§502, 503, or 1111 of the Bankruptcy Code. Unless otherwise specified in this Plan or ordered by the Bankruptcy Court, "Allowed Claim" or "Allowed Administrative Expense" shall not include interest.

4.      **Claim** has the meaning set forth in section 101(5) of the Bankruptcy Code.

**5.**      **Code** shall mean the Bankruptcy Reform Act of 1978, codified as Title 11 of the United States Code, in effect as of Debtors' Petition Date.

6.      **Confirmation Date** shall mean the date upon which the Court approves the Debtor's plan.

7.      **Court** shall mean the United States Bankruptcy Court for the District of Connecticut including the United States Bankruptcy Judge presiding therein.

8.      **Effective Date** shall mean the first business day following the last day on which an appeal from an Order of the Court confirming this Plan may be taken under applicable law and no such appeal has been taken or if such an appeal has been taken, the first business day following the date upon which such appeal has been exhausted and the Plan may Proceed.

9.      **Petition Date** shall mean March 13, 2014, the date Debtor filed the instant Chapter 11 Case.

10.      **Person** means an individual or a partnership, corporation, limited liability Debtor, cooperative, trust, unincorporated organization, association, joint venture, government or agency or political subdivision thereof, or any other form of legal entity.

11.      **Representatives** includes, with respect to any particular Person, such Person's present, former or future officers, directors, employees, consultants, members, managers, partners, principals, agents, advisors (including any attorneys, financial advisors, investment bankers, and other professionals retained by such Persons), Affiliates, and representatives.

12.    **Voting, Cram Down and Confirmation**

a.  **Voting**

In order to obtain confirmation of the Plan by the Bankruptcy Court, the Plan must be accepted by the Creditors of Classes 2, 3, 5 and 6 assuming that their claims are Allowed Claims. Of those creditors in Class 5 who have Allowed claims and actually vote on the Plan, creditors holding at least two-thirds in dollar amount of the allowed claims and who constitute more than one-half in number of such voting creditors must vote for the Plan in order for the Plan to be confirmed.

Administrative claims are to be paid in full upon the Effective Date (unless they consent to other treatment); they are not impaired under the Plan and are deemed to have accepted the Plan.  Creditors within a class vote as part of a class.

b.    **Cram Down**

1.    If any class should fail to accept the Plan by the required majority, the court may, under §1129(b) of the Bankruptcy Code, nonetheless confirm the Plan if at least one impaired class has accepted the Plan and the court finds that the Plan does not discriminate unfairly and is fair and equitable with respect to any impaired class which has not accepted the Plan.  A plan is "fair and equitable" within the meaning of this section if it provides as to a dissenting class of secured creditors, retention of the lien securing the claim in the allowed amount of the claim, and payment of deferred cash payments totaling the allowed amount of such claim and having a value, as of the effective date of the Plan, of his/hers/theirs collateral. As to a dissenting class of unsecured creditors, a Plan is "fair and equitable" if it receives property of a value, as of the effective date of the Plan, equal to the allowed amount of his/hers/theirs claims, or the holders of claims in junior classes will receive or retain nothing under the plan.  The rule that junior classes receive or retain no property is sometimes called the absolute priority rule".  However, an exception to this rule exists where either the plan provides for a liquidation or a junior class makes a "substantial" contribution of new money or property into the debtor as part of a plan of reorganization, and this exception may provide an opportunity for the Debtor to retain his interest in his property.  The Debtor intends to invoke these "cram down" provisions against any class, secured or unsecured, that fails to accept the Plan.

2.    To the extent that the word "impaired" is used, impaired is defined in 11 USC §1124 as follows, except as to unfavorable treatment agreed upon by any class or claimant:

A class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan

      1.     leaves unaltered, the legal, equitable and contractual rights to which such claim or interest entitles the holder of such claim or interest; or

      2.     notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default-

        a.     cures any such default that occurred before or after the commencement of the case under this title (11 USC 101 et seq.) other than a default of a kind specified in § 365(b)(2) of this title 11 USC 365(b)(2) or of a kind that § 365(b)(2) expressly does not require to be cured;

        b.     reinstates the maturity of such claim or interest as such maturity existed before such default;

        c.     compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law;

        d.     if such claim or such interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to §365(b)(1)(A), compensates the holder of such claim or such interest (other than the Debtor or an insider) for any actual pecuniary loss incurred by such holder as a result of such failure; and

        e.     does not otherwise alter the legal, equitable or contractual rights to which such claim or interest entitles the holder of such claim or interest.

**The major objectives of the Debtor's Plan of Reorganization** are:

      1.     Payment to and protection of the interests of the secured creditors;

      2.     Payment of all obligations to the taxing authorities;

      3.     The payment of all priority and administrative claims;

      4.     Payment of an amount to unsecured creditors that is not less than such creditors would receive in the event that the Debtor was liquidated on the effective date of the Plan.  The following is a brief summary of the Plan and should not be relied upon for voting purposes. Creditors are urged to read the Plan in full. Creditors are further urged to consult with counsel or with each other in order to fully understand and evaluate the Plan.

All creditors who are listed in the Debtor's schedules filed with the Bankruptcy Court may vote on the Plan whether or not they have filed proofs of claim, except in those instances where the schedules reflect that the claim is disputed, unliquidated, contingent or where objections to claims have been filed.  Further, all creditors who are listed in the schedules will receive payment pursuant to the Plan whether or not a Proof of Claim was filed, except in those

instances where the schedules reflect that the Creditor's claim is disputed, contingent, or unliquidated or the Debtor has objected to such listed debt.  In the case where the Debtor has objected to claims and/or listed debts, payments will be made in accordance with the Plan upon the Court's final decision as to the allowed amount.  Where a proof of claim is filed in an amount different from that set forth in the Debtor's schedules, or is filed as a claim which the schedules list as disputed, contingent or unliquidated, the same may be subject to objection, and after a hearing thereon, may be either allowed, reduced or disallowed by the Court and the amount determined in that instance will establish the amount to be paid to the Creditors pursuant to the Plan.

## ARTICLE TWO
### CLAIMS AND INTERESTS UNDER THE PLAN

A.      **Priority Claims** include the claim of the City of Norwalk for unpaid personal property taxes in the amount of $1,047.39.

B.      **Secured Claims** include the following claims:

1.      **Class 1** includes the claim of Deutsche Bank et al, in the amount of $1,423,542.48, by virtue of a first mortgage on Debtor's real property located at 13 and 15 Ensign Road, Norwalk, Connecticut.

2.      **Class 2** includes the claim of JP Morgan Chase Bank, N.A., in the amount of $23,500.00 by virtue of a vehicle lien on a 2008 Range Rover.

3.      **Class 3** includes the claim of Liberty Bank in the amount of $17,670.00 by virtue of a vehicle lien on a 2002 Chris Craft boat.

4.      **Class 4** includes the claim of M & T Bank in the amount of $17,670.00 by virtue of a vehicle lien on a 2006 Airstream Trailer.

5.      **Class 5** includes the claim of Spencer Trask Ventures, Inc. in the amount of $78,400.00 by virtue of a security interest on certain stock warrants.

C.      **Unsecured Claims. Class 6** includes all 29 creditors holding unsecured claims, in a total estimated amount of $2,119,521.26.

## ARTICLE THREE

## TREATMENT OF CLASSES AND INTERESTS NOT IMPAIRED UNDER THE PLAN.

A.    **Administrative Claims.**   Administrative claims, which include the attorney's fees of Charmoy & Charmoy, counsel for the Debtor, in the estimated amount of $23,000, shall be paid in full on or before the Effective Date or as otherwise provided herein or upon allowance by the Court, whichever is later.  Any entity herein may elect to receive payment over a period of time or a different treatment.

B.    **United States Trustee's Fees.**  All moneys due the U. S. Trustee pursuant to 28 USC §1930 will be paid on or before the Effective Date.  In accordance with §1129(a)(12) of the Bankruptcy Code and 28 U.S.C. §1930, all quarterly fees payable to the United States Trustee shall be paid by the debtor in full on or before their respective due dates and shall continue to be assessed and paid until such time as a final decree closing, converting or dismissing this case is entered by the Court.  The debtor shall also timely file monthly operating reports every month until such time as a final decree is entered by the Court or the Court enters an order converting or dismissing this case.

C.    **The Class 1** claim of Deutsche Bank National Trust Company as Trustee, et al, shall be treated as follows:  Debtor shall remain current on his normal monthly payments and shall maintain same until the claim is paid in full.  This claim is unimpaired.

D.    **The Class 4** claim of M & T Bank shall be treated as follows:  Debtor shall remain current on his normal monthly payments until the claim is paid in full.  This claim is unimpaired.

## ARTICLE FOUR

## TREATMENT OF CLASSES AND INTERESTS IMPAIRED UNDER THE PLAN

A.    **Secured Claims.**

1.    **Allowed Priority Claims under §507(a)(8).**  The claim of the City of Norwalk in the total amount of $1,047.39 shall be amortized at 18% interest over 12 months, and paid in equal monthly installments of $96.02.

6

2.      **Secured Claims.**

a.      The **Class 2** claim of JP Morgan Chase Bank, N.A. shall be amortized at 2.75% interest over 60 months, and shall be paid in 60 monthly installments of $419.66. This payment schedule commenced in April of 2015. This claim is impaired.

b.      The **Class 3** claim of Liberty Bank shall be paid in the normal monthly amount of $706.83 (which incorporates the contractual interest rate) until the claim is paid in full. This claim is impaired.

c.      The **Class 5** claim of Spencer Trask Ventures, Inc. in the amount of $78,400.00 by virtue of a security interest on certain stock warrants shall be paid according to the Settlement Agreement and Motion to Compromise that shall be filed by the parties in connection with the confirmation of the Plan, the terms of which are incorporated herein by reference. This claim is impaired.

3.      **Unsecured Claims. Class 5** shall be paid 10% pro rata, over 10 years, in quarterly installments of $5,298.80 EXCEPT THAT the claims of Spencer Trask Investments, Inc. and Spencer Trask Investment Partners, LLC shall be paid according to the Settlement Agreement and Motion to Compromise that shall be filed by the parties in connection with the confirmation of the Plan, the terms of which are incorporated herein by reference. In addition, except for the claims of Spencer Trask Investments, Inc. and Spencer Trask Investment Partners, LLC, which shall be paid pursuant to the Settlement Agreement, Debtor shall have the option to pay any unsecured Claim a total of 5% prorata (inclusive of any payments made to said Claimant by same date) so long as same amount is paid, in a lump sum and/or installments, within one (1) year of the Effective Date. This class is impaired.

**Payments under the Plan will commence on or before 30 days after the Effective Date.**

## ARTICLE FIVE
## EXECUTORY CONTRACTS

All executory contracts not specifically assumed in the Plan or objected to prior to confirmation shall be rejected by confirmation of the Plan.

## ARTICLE SIX
## OTHER TERMS OF THE PLAN

The claims of Spencer Trask Ventures, Inc. and Spencer Trask Venture Partners, LLC will be compromised as set forth in the Debtor's Motion to Compromise filed on or about this date.

## ARTICLE SEVEN
## MEANS FOR THE EXECUTION OF THE PLAN

Debtor's payments under the plan will be made from profits from his business operations, and/or liquidation of his assets.

## ARTICLE EIGHT
## RETENTION OF JURISDICTION BY THE COURT

The Court will retain jurisdiction until payments under this Plan have been fully made, notwithstanding substantial consummation of the plan, including but not limited to the following purposes:

a)      The classification of the claim of any creditor and the re-examination of claims which have been allowed for purposes of voting, and the determination of such objections as may be filed for creditors' claims and listed debts.  The failure by the Debtor to object to any claim before confirmation shall not be a waiver of the Debtor's right to object to or re-examine the claim in or in part.  The Debtor shall have sixty (60) days from the Effective Date to object to any claim or listed debt.

b)      The determination of all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes, or conflicts, whether or not subject to action pending as of the date of confirmation, between the debtor and any other party including, but not limited to, any right of the Debtor to recover assets pursuant to the provisions of Title 11 of the United States Code.

c)      The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in this Plan or the order of confirmation as may be necessary to carry out the purposes and intent of this Plan.

d)    The modification of this Plan after confirmation pursuant to the Bankruptcy Rules and Title 11 of the United States Code.

e)    The enforcement and interpretation of the terms and conditions of this Plan and the Settlement agreement between Debtor, Spencer Trask Ventures, Inc., aand Spencer Trask Venture Partners, LLC.

f)    The entry of any order, including injunctions, necessary to enforce the title, rights, and powers of the Debtor and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as this Court may deem necessary.

g)    The entry of an order concluding and terminating this case.

## ARTICLE NINE
## EFFECTS OF PLAN CONFIRMATION

**9.1**.  **Discharge.**  Except as otherwise expressly provided in the Plan and/or the Agreement, upon the Debtor's completion of all payments under the Plan pursuant to 11 U.S.C. §1141(d)(5), the Plan shall discharge the Debtor effective immediately from any Claim and any "debt" (as that term is defined in §101(11) of the Bankruptcy Code), and the Debtor's liability in respect thereof is extinguished completely, whether reduced to judgment or not, liquidated or unliquidated, contingent or noncontingent, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, known or unknown, that arose from any agreement of the Debtor entered into or obligation of the Debtor incurred before the Confirmation Date, or from any conduct of any of the Debtor prior to the Confirmation Date, or that otherwise arose before the Confirmation Date, including, without limitation, all interest, if any, on any such debts, whether such interest accrued before or after the Petition Date, and including, without limitation, any liability of a kind specified in §§502(g), 502(h) and 502(i) of the Bankruptcy Code, whether or not a proof of claim is filed or deemed filed under section 501 of the Bankruptcy Code, such Claim is allowed under §502 of the Bankruptcy Code, or the holder of such Claim has accepted the Plan.

**9.2**    **Term of Injunctions or Stays.**

(a)    Except as otherwise expressly provided herein or in the Confirmation Order, all Persons who have held, hold or may hold Claims will be permanently enjoined, from and after

the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on or related to any such Claim against the Debtor, or his respective Affiliates or Representatives, (ii) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, guaranty, assignment, or order against the Debtor or his respective Affiliates or Representatives, with respect to such Claim, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or his respective Affiliates or Representatives, or against the property or property interests of Debtor or his respective Affiliates or Representatives with respect to such Claim, and (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due to the Debtor, or his respective Affiliates or Representatives, or against the property or interests in property of the Debtor, or its respective Affiliates or Representatives, with respect to such Claim.

(b)     Unless otherwise provided in the Confirmation Order, all injunctions or stays arising under or entered during this case under §§105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**9.3    Revesting.**

Except as otherwise expressly provided in the Plan, and subject to the continuing jurisdiction of the Bankruptcy Court, on the Effective Date the Debtor will be vested with all of the property of the Estate (including, without limitation, any moneys held in escrow or separate segregate accounts during the pendency of the Bankruptcy Case) free and clear of all Claims, liens, encumbrances, charges and other interests of creditors and equity security holders, and may operate its business free of any restrictions imposed by the Bankruptcy Code or by the Bankruptcy Court.  All property of the estate shall become the property of the Debtor.

**9.4    Plan Default.**

Any creditor holding an Allowed Claim that believes that Debtor is in default of its obligations under the Plan shall send a notice to the Debtor in the form and manner provided below describing the nature and/or amount of said claimed default.  Debtor shall then have 15 business days (excluding weekends and federal and Connecticut state holidays) from the date of said notice to either cure said default or dispute the existence of same.  Should Debtor agree to the existence of a default and fail to cure same within the 15 day period, Claimant shall then be

allowed to proceed with any legal or equitable remedies normally available to it to collect on its claim.  Should Debtor dispute the nature or amount of said default, Claimant's sole remedy shall be through proceedings before this Court.  Any injunctions or stays provided for by the Plan shall continue until Debtor fails to cure a default and/or the Court determines that Debtor defaulted and failed to cure same, as the case may be.

## ARTICLE TEN
## MODIFICATION OF THE PLAN

The Debtor may propose amendments or modifications of this Plan after confirmation, notwithstanding the fact that the Plan may be substantially consummated.  The Debtor may, with the approval of the Court, and so long as it does not materially or adversely affect the interests of creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Order of Confirmation, in such manner as may be necessary to carry out the purposes and effect of this Plan.

## ARTICLE ELEVEN
## GENERAL PROVISIONS

1.      **Payment on Effective Date.**  No payments under this Plan will be made to Claimants until on or after the Effective Date.

2.      **Payments on Business Days.**   Whenever a distribution hereunder is required to be made on a day other than a Business Day, such distribution shall be made on the first Business Day immediately following, without interest.

3.      **Objections to Claims and Motions to Subordinate Claims.**

a.      As soon as practical, objections to Claims, if not made prior to confirmation, shall be filed with the Bankruptcy Court and served upon the holder of each Claim to which the Debtor objected.

b.      Unless otherwise ordered by the Bankruptcy Court, the Debtor may litigate to judgment, settle or withdraw objections to Claims or motions to subordinate claims.

c.      Distribution with respect to and on account of Claims to which the Debtor has objected to shall be made without interest, except with respect to Priority Claims, when an

Order, judgment, decree or settlement agreement with respect to such Claim becomes a Final Order.

4.    **Fractional Cents.**  Any other provision of this Plan to the contrary notwithstanding, no payments of fractions of cents will be made.  Whenever a payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding off of such fraction to the nearest whole cent (rounding down in the case of .5).

5.    **Setoffs.**  The Debtor may, but shall not be required to set off against any Claim, the payments to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever Debtor may have against the Claimant, but neither the failure to do so nor the allowance of a Claim hereunder shall be paid until such Disputed Claim shall become an Allowed Claim.  Except as provided in 3(c), no holder of a Disputed Claim shall be entitled to any interest on the moneys reserved with respect to such Claim.

6.    **Disputed Payments**.  In the event of any dispute between and among Claimants (including the Person or Persons asserting the right to receive the disputed payment) as to the right of any Person to receive or retain any payment to be made to such Person under this Plan, the Debtor shall, in lieu of making such payment to such Person, make it instead into an escrow account, for payment as ordered by a Court of competent jurisdiction or as the parties to such dispute may otherwise agree among themselves.

7.    **Cash Payments**.  If any Person entitled to receive a cash payment under this Plan cannot be located on or before the Effective Date of the Plan, such cash shall be set aside and held in trust in a segregated, interest-bearing account to be maintained by the Debtor.  If such Person is located within six months of the Effective Date, such cash, together with any interest earned thereon held by the Debtor with respect to such payment, shall be paid or distributed to such Person. If such Person cannot be located within six months after the Effective Date, any such cash and accrued interest thereon shall become the property of the Debtor pursuant to 11 USC §347(b), provided, however that nothing contained in this Plan shall require the Debtor to attempt anything other than reasonable efforts to locate such person.

8.    **Notices.**  All notices, requests or demands in connection with this Plan shall be in writing and shall be deemed to have been given when received, or if mailed, five days after the date of mailing provided such writing shall be sent by registered or certified mail, postage prepaid, return receipt requested, and if sent to the Debtor addressed to:

Scott M. Charmoy, Esq.
Charmoy & Charmoy
1700 Post Road, Suite C-9
P. O. Box 804
Fairfield, CT 06824-0804
scottcharmoy@charmoy.com

9.      **Headings**.  The headings used in this Plan are inserted for convenience only and neither constitute a portion of this Plan nor in any manner effect the provisions of this Plan.

10.     **Severability.**  Should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or effect the enforceability and operative effect of any and all other provisions of this Plan.

11.     **Governing Law**.  Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with, the internal laws of the State of Connecticut.

12.     **Successors and Assigns.**  The terms of this Plan and the order confirming same, and the rights and obligations of any person named, referred to, or otherwise treated in the Plan, shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

13.     **Effect of Payment of Secured Debt.**

a.      Unless otherwise provided for in the Agreement, to the extent the Plan provides for payment(s) in satisfaction of any allowed secured claim, secured by mortgage or security or possessory interest and such payments is/are made in full consummation of the Plan, said claimant, at the request of the Debtor, shall execute any documents or perform any reasonable act to release or assign said mortgage or security or possessory interest pursuant to the terms of the plan.

b.      In the event this Plan provides for the payment and cure of arrearages on either unsecured or secured claims pursuant to §§1123(a)(5)(G), notwithstanding 11 USC §§506(b) and 1322 (e), the amount necessary to cure the pre-petition default arrearages shall be governed by the proof of claim filed by, or on behalf of, the holder of the claim, unless specifically controverted in this plan or by an objection to the claim pursuant to 11 USC §502(a) and Bankruptcy Rule 3007.

c.      If the debtor pays the arrearage amount specified in the timely filed Proof

13

of Claim, while timely making all required post-petition payments (including any other reasonable amounts that properly come due pursuant to the pre-petition contractual agreement of the parties and of which the creditor gives such timely and appropriate notice as the parties' pre-petition agreement requires), the loan will be reinstated according to its original terms, extinguishing any right of the claim holder to recover any amount alleged to have arisen prior to the filing of the petition, unless such amounts were included in the allowed proof of claim filed in this case.

14.    **Unclaimed Property.**  If any payments made under this Plan remain unclaimed for a period of six months after it has been delivered in accordance with the Plan to the holder entitled thereto, such unclaimed property shall be forfeited by such holder, whereupon all right, title and interest in and to such unclaimed property shall immediately and irrevocably vest in the Debtor, and a) the Debtor shall thereafter be empowered to take whatever steps may be reasonably necessary to exercise control over such unclaimed property including, without limitation, the issuance of stop payment orders on any unclaimed plan payment checks; and b) the holder shall be deemed to be satisfied, paid in full, and discharged under this Plan, and it forfeits any and all payments or other benefits to which it is entitled under this Plan.

15.    **Returned Payments.**  If a payment pursuant to the Plan to any holder of any Allowed Claim is returned to the Debtor due to an incorrect or incomplete address for the holder of such Allowed Claim, then the Debtor shall use reasonable efforts to obtain an accurate address for such holder. If, after six months after the date of said payment, such reasonable efforts have not yet yielded an accurate address for such holder, then the payment and any future payments to be paid to such holder under the Plan shall be deemed to be Unclaimed Property under Article 12, Section 14 of the Plan and shall be treated as such.

**DEBTOR**

BY: _____

Michael Siek

By: _____/s/_____

Scott M. Charmoy, Esq.  CT15889
Charmoy & Charmoy
1700 Post Road, Suite C-9
P.O. Box 804
Fairfield, CT 06824-0804
scottcharmoy@charmoy.com